IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO.<br>) 1:17-cv-00515-SJD<br>) |
| v. | ) Dlott, J.<br>) Litkovitz, M.J. |
| R&L CARRIERS, INC., and R&L CARRIERS SHARED SERVICES, LLC, | )<br>) FIRST AMENDED COMPLAINT<br>)<br>) |
| Defendants. | )<br>) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on sex and to provide appropriate relief to a class of female applicants and deterred female applicants who were adversely affected by such practices.

As alleged with greater particularity in paragraph 13 below, the Equal Employment Opportunity Commission ("Commission") alleges that Defendants, R&L Carriers, Inc., and R&L Carriers Shared Services, LLC ("Defendants") deterred and refused to hire qualified females as dockworkers/loaders because of their sex in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Ohio.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant R&L Carriers, Inc. has continuously been an Ohio corporation and continuously has done business in the State of Ohio and has had at least fifteen (15) employees.

5. At all relevant times, Defendant R&L Carriers Shared Services, LLC has continuously been a domestic limited liability company and continuously has done business in the State of Ohio and has had at least fifteen (15) employees.

6. At all relevant times, Defendants have been employers engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7. More than thirty (30) days prior to the institution of this lawsuit, an EEOC Commissioner's Charge was filed alleging violations of Title VII.

8. On November 8, 2016, the Commission issued to Defendants an Amended Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendants to provide the opportunity to remedy the discriminatory practices described in the Amended Letter of Determination referenced above in Paragraph 8.

10. The Commission was unable to secure from Defendants a conciliation agreement that was acceptable to the Commission.

11. The Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Since at least January 1, 2010, Defendants have engaged in unlawful hiring practices at their Wilmington, Ohio, location in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Defendants have refused to hire women as dockworkers/loaders because of their sex:

    (a)    Based on data from the United States Census Bureau, for the year 2010, of the individuals available to work as dockworkers/loaders in Wilmington, Ohio, approximately 22% were female.

    (b)    Based on data from the United States Census Bureau, for the year 2011, of the individuals available to work as dockworkers/loaders in Wilmington, Ohio, approximately 22% were female.

    (c)    Defendants hired 64 dockworkers in Wilmington in 2010, of which only one (1) was female.

    (d)    Defendants hired 50 dockworkers in Wilmington in 2011, of which only one (1) was female.

    (e)    As private employers with 100 or more employees that are subject to Title VII of the Civil Rights Acts, Defendants are required to submit to the EEOC annual reports ("EEO-1") of employment data categorized by, among other demographics, gender.

    (f)    From at least the year 2007 through 2011 Defendants identified and coded their dockworker and loader positions on their EEO-1 reports as "Laborers and Helpers".

    (g)    For the year 2007, Defendants reported on their EEO-1 reports having 296 Laborers and Helpers at their Wilmington, Ohio location, one (1) of which was female. For the year 2007, nationwide,

Defendants identified 2,144 Laborers and Helpers, of which exactly two (2) were female.

(h)   For the year 2008, Defendants reported on their EEO-1 report having 266 Laborers and Helpers at the Wilmington facility, of which only one (1) was female.

(i)   For the year 2009, Defendants reported on their EEO-1 report having 235 Laborers and Helpers at the Wilmington facility, of which only one (1) was female.

(j)   For the year 2010, Defendants reported on their EEO-1 report having 269 Laborers and Helpers at the Wilmington facility, of which only four (4) were female. Further, in 2010, while identifying and coding their dockworkers/loaders as "Laborers and Helpers", Defendants reported 388 "Operatives", of which sixteen (16) were female.

(k)   For the year 2011, Defendants reported on their EEO-1 report having 265 Laborers and Helpers at the Wilmington facility, of which only three (3) were female. In 2011, while still identifying and coding their dockworkers/loaders as "Laborers and Helpers", Defendants again reported 388 "Operatives", of which fifteen (15) were female.

(l)   Beginning in 2012, Defendants' EEO-1 reports suggest that Defendants stopped solely identifying and coding their dockworkers/loaders as "Laborers and Helpers" and began coding them as "Operatives." The subsequent EEO-1 reports indicate that Defendants continued not hiring females as dockworkers/loaders.

5

    (1)    Defendants' 2012 EEO-1 report for Wilmington shows 31 Laborers and Helpers down from 262 in 2011, a decrease of 231 employees from the previous year, of which only one was female.

    (2)    Defendants' 2012 EEO-1 report for Wilmington further shows the number of employees designated as "Operatives" increased from 388 to 615, an increase of 227 employees, of which sixteen (16) were female.

    (3)    Defendants' 2013 EEO-1 report for Wilmington shows 34 Laborers and Helpers, of which two (2) were female and 624 Operatives, of which nineteen (19) were female.

    (4)    Defendants' 2014 EEO-1 report for Wilmington shows 32 Laborers and Helpers, one (1) of which was female and 651 Operatives, of which fifteen (15) were female.

    (5)    Defendants' 2015 EEO-1 report for Wilmington shows 32 Laborers and Helpers, of which two (2) were female and 665 Operatives, of which twenty (20) were female.

    (6)    Defendants' 2016 EEO-1 report for Wilmington shows 35 Laborers and Helpers, of which three (3) were female and 674 Operatives, of which seventeen (17) were female.

(m)    Defendants' former management officials and employees have provided statements relating to the companies' discriminatory conduct, to include but not limited to:

    (1)    On or about May 14, 2010, Eugene Rhodes,

Defendants' former Senior Director of Human Resources filed an employment discrimination suit against Defendants. Defendants employed Rhodes from February 1, 2009 to October 9, 2009.

(2) On or about January 7, 2013, Eugene Rhodes testified under oath in his deposition in his suit against Defendants that, "[I]t was known throughout the company and HR that females weren't to be hired on the docks. I mean, that's a blatant violation. I talked to Jeff [Copsey, Defendants' Vice President and Rhodes' supervisor] about that repeatedly. We even brought Jeff applications of individuals who were females with backgrounds that clearly said they were qualified to work on the dock. But it was made clear that the owners were not going to allow men and women to work on the docks together."

(3) Eugene Rhodes also testified that, "I was told by Jeff Copsey not to hire women on the docks." Under deposition questioning Rhodes limited his knowledge to the Defendants' Headquarters in Wilmington.

(4) Eugene Rhodes further testified that "I was directed by Jeff Copsey that the owners did not want women on the docks."

(5) Eugene Rhodes testified that he "met resistance any time I tried to change those policies."

(6) On or about November 25, 2013, during an EEOC administrative deposition, Jeremy Bryant, Defendants' former

7

Director of Recruiting testified under oath that he had grown up in Wilmington, Ohio and that he had known since high school of R&L's reputation in the community for not hiring women on the docks. Jeremy Bryant worked for Defendants from February 2009 until February 2010.

(n) Examples supporting an inference of unlawful discrimination include, but are not limited to, the following:

(1) On or about January 14, 2010, Kristy Baker, female, applied for work at Defendants' Wilmington location and was told by the receptionist that the warehouse is for the men. She was not hired.

(2) On or about April 28, 2011, Stacie Huff, female, applied for dock work at Defendants' Wilmington location. She had previously worked on the docks for Airborne Express, an express delivery company and cargo airline, but Defendants did not interview her or offer her a job. Ms. Huff was told by Wilmington male dockworkers that Defendants do not hire women to work on the docks.

(3) On April 30, 2010, Linda Rodgers, female, applied to Defendants' Wilmington location and had three (3) years of packaging experience at Airborne Express and four (4) years as a mold operator. Defendants did not hire her. On the same day Ms. Rodgers applied, April 30, 2010, Jeffrey Newman, male, applied to

8

Defendants' Wilmington facility and listed on his application as his only employment experience that he had worked seven (7) months in picking/packing with Kohl's, three (3) months making candles, and three (3) months as a cook at Long John Silvers. Defendants hired Mr. Newman on May 5, 2010. Likewise, on April 27, 2010, Kyle Funk, male, applied to Defendants' Wilmington location and listed on his application as his only employment experience that he had worked for five (5) months in a factory and for two (2) months in sales. Defendants hired Mr. Funk on May 5, 2010.

(4) Sue Key, female, applied to the Wilmington location on-line on April 25, 2011, and had thirteen (13) years of experience as sorter/fork lift operator at Airborne Express. She was not hired. One (1) day later on April 26, 2011, Defendants hired Robert Kuhn, male, who listed on his application as his only employment experience that he had worked for four (4) months as a tire tech and for two (2) years of experience as a tire salesman. That same day, Defendants hired another male, Christopher Pendell, who listed on his application as his only work experience that he had worked for two (2) years as a tire tech, fourteen (14) months of experience as a forklift operator, and eleven (11) months experience at McDonald's as a "general food server."

14. The effect of the practices complained of in paragraph 13 above has been to deprive female applicants and deterred female applicants of equal

9

employment opportunities and otherwise adversely affect their status as applicants and employees because of sex.

15. The unlawful employment practices complained of in paragraph 13 above were and are intentional.

16. The unlawful employment practices complained of in paragraph 13 above were done with malice or reckless indifference to the federally protected rights of the class of female applicants and deterred female applicants.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in employment practices that discriminate on the basis of sex, to include, but not limited to, failing to recruit and hire females as dockworkers and loaders.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for female applicants and that eradicate the effects of Defendants' past and present unlawful employment practices.

C. Order Defendants to make whole the class of female applicants and deterred female applicants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful

employment practices, including but not limited to the recruitment and hiring of female dockworkers and loaders.

      D.     Order Defendants to make whole the class of female applicants and deterred female applicants by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 13 above in amounts to be determined at trial.

      E.     Order Defendants to make whole the class of female applicants and deterred female applicants by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 13 above, including but not limited to, emotional pain, suffering, humiliation, and inconvenience, in amounts to be determined at trial.

      F.     Order Defendants to make whole the class of female applicants and deterred female applicants by providing punitive damages for Defendants' malicious and reckless conduct, as described in paragraph 13 above, in amounts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

*s/ Kenneth L. Bird*
Kenneth L. Bird
Regional Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Indianapolis District Office
101 W. Ohio St., Suite 1900
Indianapolis, IN 46204-4203

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Indianapolis District Office

*s/ Kenneth W. Brown*
Kenneth W. Brown
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Louisville Area Office
600 Dr. Martin Luther King Jr. Place
Suite 268
Louisville, KY 40202
Phone: 502-582-5440
Fax: 502-582-5437
email: Kenneth.Brown@eeoc.gov

.